**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **No. 1:21-cr-00257-RDM** |
| | **:** | |
| **RONNIE B. PRESLEY,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S**
**EMERGENY AND SUPPLEMENTAL EMERGENCY MOTIONS TO MODIFY**
<u>**CONDITIONS OF RELEASE**</u>

The United States of America, by and through the United States Attorney for the District of Columbia, hereby opposes defendant's emergency and supplemental emergency motions (ECF doc. ## 25 & 27) to modify conditions of release.  In his motions the defendant, who is preventatively detained, seeks Court authorization to be released for four days in order to attend a funeral hundreds of miles from the District of Columbia and his place of confinement and without any accompanying law enforcement personnel.  Because of the defendant's demonstrated dangerousness and flight risk, the defendant's motions should be denied.

<u>Background</u>

The defendant has been charged in a Superseding Indictment with two felonies and six misdemeanors, all relating to his participation in the January 6, 2021 attack on the U.S. Capitol, in which thousands of individuals unlawfully and violently entered the Capitol, disrupted congressional proceedings to certify the 2020 vote of the Electoral College, damaged federal property, and attacked law enforcement members.  The felony charges against the defendant are obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and interfering with a law enforcement officer during a civil disturbance, in violation of 18 U.S.C. §231(a)(3).  The misdemeanor charges against him consist of unlawfully entering and remaining in a restricted

building, that is, the Capitol, while the Vice President of the United States was visiting, in violation of 18 U.S.C. § 1752(a)(1); disorderly conduct within a restricted building, that is, the Capitol, while the Vice President was visiting, in violation of 18 U.S.C. § 1752(a)(2); engaging in physical violence in a restricted building, i.e., the Capitol, while the Vice President was visiting, in violation of 18 U.S.C. § 1752(a)(4); and engaging in disorderly conduct in, impeding passage through and within, and unlawfully demonstrating and parading in, the Capitol and its grounds, in violation of 40 U.S.C. § 4104(e)(2)(D), (E) and (G). The defendant has pled not guilty.

<u>The Defendant's Criminal History</u>

The defendant, who is now 43 years old, came to the Capitol on January 6, 2021, after incurring multiple criminal convictions in his native Tennessee. He was convicted in 1997 of two counts of felony burglary; of driving while impaired and reckless endangerment in 2000; and of domestic assault in 2020. He also was charged in Tennessee, in 2004 and 2005, respectively, with aggravated rape (two counts) and domestic assault. Those charges were all later "retired," after sentencing was deferred for a period of time.

The Tennessee court system initially sentenced the defendant to probation for his 1997 burglary convictions, after which he proceeded to pick up four probation violations and a bench warrant.

The defendant appears to have been on probation for his 2020 assault conviction at the time of his attack on the Capitol.

<u>The Defendant's Conduct on January 6, 2021</u>

The government has gathered video recordings, including recordings with audio, that show the defendant's illegal conduct in and around the Capitol during the attack. The earliest of

these recordings show the defendant with numerous other attackers in the area of the Lower West Terrace, all moving toward the Capitol.  As other attackers near him are climbing scaffolding that leads to entry points on the Upper West Terrace, the defendant can be heard shouting, "Do it!" and "They're gonna  [unintelligible]!"  A still from that recording, with the defendant identified, appears below:



Several minutes later the defendant was recorded talking on the phone and loudly boasting, "I am on the top steps of the f**king Capitol, and you can come too!"



At approximately 2:35 p.m., the defendant and multiple other attackers proceeded through the doorway indicated in the image below:





The defendant and the other attackers with him then proceeded up a flight of stairs into the Rotunda, where he joined a large group of others already unlawfully present.  After approximately 30 minutes, multiple law enforcement officers entered and began to clear the room.  The defendant physically resisted leaving, by leaning into the police line multiple times. One example is shown in the still image below, which shows an officer pressing a police baton horizontally against the defendant's torso.



At one point during this confrontation, the defendant grabbed an officer's baton, as shown below.



After about 10 minutes, during which law enforcement utilized a chemical irritant against the defendant and other attackers, the defendant finally left the Rotunda.  He exited the building through the East Rotunda Door, at approximately 3:19 p.m.

However, the defendant remained immediately outside that doorway for another 20 minutes, impeding police efforts to clear other attackers from the building and hindering their efforts to prevent others from entering.  Again, the police were required to use a chemical irritant against the defendant.  And when one officer pushed against the defendant with his riot shield, the defendant grabbed onto it with one hand and repeatedly punched it with his other.  A still image from video that captured that illegal conduct appears below:

8



<u>The Defendant's Conduct After January 6, 2021</u>

The FBI began actively investigating the defendant around January 10, 2021.  On January 27, 2021, the Bureau contacted a female relative of the defendant, in an attempt to get contact information for him and potentially interview him, but was not successful in reaching him.  A felony arrest warrant was issued for the defendant on January 29, 2021.  The FBI then determined that the defendant was very likely in the Westmoreland, Tennessee area, but were unable to locate him.

On February 23, 2021, the FBI case agent received a call from the defendant's relative whom the agent previously contacted, who advised she had the defendant on the phone.  The agent then spoke to the defendant, who acknowledged he was aware the FBI had been in the

Case 1:21-cr-00257-RDM   Document 28   Filed 01/08/22   Page 10 of 14

Westmoreland area looking for him, and further acknowledged that he knew the Bureau wanted to talk to him about his participation in the attack on the Capitol.  In response to further questions, the defendant stated he was not currently in central Tennessee but would not state where he was other than that he was somewhere "out east."  The defendant refused to disclose to the agent when he would be returning to central Tennessee.

The agent asked the defendant to provide his current cell phone number and also told the defendant that now that there were charges against him, he should meet with the agent as soon as possible; otherwise it would be worse for the defendant.  The defendant declined to provide his number.   The agent then admonished the defendant that he should contact him in 24 hours in order to arrange his surrender.  The defendant stated he understood and the call then ended.

The defendant did not thereafter contact that agent but was eventually arrested at a residence in Old Hickory, Tennessee, on March 5, 2021.  The FBI determined that in the interim he had traveled to southern Florida.  In a post-arrest interview, the defendant denied traveling to Florida, but a relative of the defendant later confirmed to the FBI that the defendant had in fact made the trip.  In the interview the defendant also revealed he had instructed a friend, on February 23, 2021, to drive the defendant's truck to the Westmoreland residence of the defendant's parents.  The defendant refused to explain why he had instructed his friend to do so.

Finally, the defendant stated he had noticed law enforcement outside the Old Hickory residence, earlier in the day on March 5, and had heard them calling his name.  He stated rather than come out he had chosen to hide inside.

<u>Argument</u>

I.      <u>The Bail Reform Act Supports the Defendant's Continued Detention.</u>

The defendant has been detained in this case since his initial appearance on a felony

complaint in the Middle District of Tennessee on March 6, 2021, when he waived his right to a

detention hearing.  Had the defendant not so waived his right to a hearing, the government was

prepared to move for his detention pursuant to provisions of the Bail Reform Act, in particular,

18 U.S.C. § 3142(f)(2)(A), which allows a court to order detention if there is a "serious risk that

the person will flee."

The government submits that that serious risk of flight is greater than it was last March,

given that the defendant has since been charged in an eight-count indictment.  An examination of

the factors the BRA requires the Court to consider, before ordering detention, confirms that.

Under 18 U.S.C. § 3142(g) the Court, before issuing an order of detention,

> shall take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including
>      whether the offense is a crime of violence, a violation
>      of section 1591, a Federal crime of terrorism, or involves a
>      minor victim or a controlled substance, firearm, explosive, or
>      destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> > (A) the person's character, physical and mental condition,
> >      family ties, employment, financial resources, length of
> >      residence in the community, community ties, past conduct,
> >      history relating to drug or alcohol abuse, criminal history,
> >      and record concerning appearance at court proceedings;
> >      and
> >
> > (B) whether, at the time of the current offense or arrest, the
> >      person was on probation, on parole, or on other release

11

>           pending trial, sentencing, appeal, or completion of sentence
>           for an offense under Federal, State, or local law; and
>
> (C)   the nature and seriousness of the danger to any person or
>           the community that would be posed by the person's release.

A.   The nature and circumstances of the offense charged

In this case, although the charged offenses are not crimes of violence, and are not any of the other categories of offenses described in 18 U.S.C. § 3142(g)(1), their nature and circumstances are quite serious.  They all occurred in the context of an attack by hundreds of others and was designed to thwart the peaceful transfer of power following a presidential election.  The defendant's offenses in particular involved the willful flouting of legitimate police commands not to enter the Capitol and to leave the Capitol.  The defendant, in concert with dozens of other attackers, ignored these commands and put the safety of numerous others at risk.

The two felony counts against the defendant carry maximum penalties of ten and five years in prison.  The government has calculated that, under the U.S. Sentencing Guidelines, if the defendant were found guilty merely of the most serious offense he is charged with, violating 18 U.S.C. § 1512(c)(2), he would face a guideline range of imprisonment of 37 to 46 months. Which is far greater than any period of incarceration he has ever served, notwithstanding his serious prior criminal record.  Accordingly, he has quite an incentive to flee.

B.   The weight of the evidence

As set out above the weight of the evidence against the defendant is strong.  It consists of video, and audio-video recordings, clearly showing the defendant committing the charged offenses and encouraging others to do so.

C.   The history and characteristics of the person

As also set out above, the defendant has prior convictions for violent felonies and has a

documented record of failing to comply with conditions of probation.  In addition, he was sentenced to a period of probation on July 22, 2020, which the government believes—but has not been able to confirm—was still in effect on January 6, 2021.

Moreover, his conduct after he became aware of the charges against him in this case shows that he in fact did flee and thereafter hid, in an effort to avoid arrest.

It is not appropriate to release a properly detained defendant for an unsupervised period of three days.

Finally, the defendant's proposal, that he be allowed to travel from northern Virginia to central Tennessee for a period of three days, on "his word" that he will immediately return to custody, Defendant's Emerg. Mot. at 1; Defendant's Supp. Emerg. Mot. at 1, merits little discussion.  The defense motion does not suggest or even contemplate that he should be under law enforcement supervision during this period, even assuming that could be arranged on such short notice, and would have him be "supervised" by his own brother.  The government submits that the same analysis that generally supports his detention also supports the conclusion that he should not be temporarily released.

Conclusion

The defendant's motions should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

by:     /s/*Michael C. Liebman*
        Michael C. Liebman
        Assistant United States Attorney
        D.C. Bar No. 479562
        555 4th Street, N.W., room 9106
        Washington, D.C.  20001
        (202) 252-7243
        (202) 353-9415 (fax)
        michael.liebman@usdoj.gov